Next case, United States v. Estevez. Good morning, your honors. May it please the court. I'm here on behalf of Mr. Estevez. This is a case in which a 19-year-old who had a, I would say, a horrendous childhood and teenage years in juvenile detention facilities is found guilty as a felon in possession of a firearm. I'd like to first discuss with the court the contention that it was error to apply a four-level increase under Guideline Section 2K2.1. And that contention is for two reasons. The first being the contention that Estevez was not in possession of the firearm, and the words in the guideline are, in connection with another felony. And the second is that there was not, under the guidelines, another felony. Now, the first, I think it's helpful to repeat the language, applicable language, in the guideline section. And it says that a four-level increase is applied if the defendant used or possessed a firearm in connection with another felony. So turning to . . . It was conspiring to rob someone else. Well, if we're . . . Well, I'd like to, on the first point of saying that there was not the possession here in connection with another felony, no . . . You met with someone planning to commit a robbery on another person who was known to be a drug dealer, and he brought with him a gun. Correct. But the agreement was here that a gun would not be used, that the robbery would be committed through beating up the other individual. So that's the problem here. We have an element in the guideline section which says possession. That element is met. But then this in connection . . . He brought a gun. He brought a gun and he possessed a gun. And they met at the building where they expected to find Sharkey, where they were going to rob Sharkey, right? Well, in looking at Curley's testimony, the basis of what is said is Curley's testimony, and that's . . . If we look at appendix pages 73 through 79, Curley said there's a phone call. And in that phone call, this is where this agreement will plan. We're going to rob in the agreement that it's by beating up, it's not by using a gun. Curley is asked . . . There was an agreement to go rob the drug dealer. Correct. You agree with that? Correct. But by what means? By beating him up. So then . . . Well . . . I mean, let me give a hypothetical, for example. Supposing that there is someone who is a felon and he has possession of a gun. And then he goes out and he has the gun and he's committing the crime of wire fraud. Well, that would not be a felon in possession of a gun, in connection with the felony. The enhancement applies where the firearm had the potential of facilitating another felony offense. So when Estevez brought the gun to this planned, intended robbery of Sharkey, was the district court wrong in finding that the firearm had the potential of facilitating? The potential of facilitating? Well, the limiting factor here in the contention is, the limiting factor was, that there was agreement not to use the gun. And there's an added fact in this record that would indicate that that was not going to be the intent and would not have been used. And that is that when Estevez shows up at this meeting, and by the way, with this meeting, Curley is asked, when was the robbery to take place? Curley says, on direct examination, there was no agreement on time and place. All that Curley said was, come now. Now, by the way, at this meeting, there's no conversation then about the robbery. It immediately goes to, oh, let me see the gun. Or he sees, he transfers, and now here, what is the gun? The gun is wrapped in a plastic bag. And as Curley testifies, is that Estevez has to unravel it first before he shows it to him. It's pursuant to a request of it. So there's an indication. Your argument is plausible, but the district court made a finding. And so for you to prevail, we have to find that it's clearly erroneous? Well, I would say, what I'm saying are facts not in dispute. And therefore, the question then becomes, under these undisputed facts, does it meet this additional element in the guideline that the possession of the gun must be in connection with the robbery, or, as the government argues here, attempted robbery, and say that there is no evidence here that it was going to be used in connection with. All we have is mere possession, nothing more. So I say on that basis that it was an incorrect ruling. So whenever someone goes to a robbery and they're going to actually do physical, the testimony is they're going to use a physical force and they possess a gun, the possession of the gun, the court can't take notice of that? Oh, you certainly can, but. Doesn't that seem just a little bit detached from the real world? Well, again. I mean, nobody made him bring it, right? In fact, Curley allegedly told him not to bring it, and yet he brought it. What could one conclude from the fact that he did bring it with him? I doubt it was inadvertent. I mean, if I had a gun in my pocket, I think I'd know it. Well, yes, I knew it. But, again, we look at this record. Well, but he brought it, so he was told, think of the facts. You're talking about the facts that are not disputed. Right. Don't bring the gun. He brings the gun. What is one logical conclusion from the fact that he brought the gun, that he intended to use it? Is that not a logical conclusion? Well, Curley said. Isn't there a logical conclusion? Curley said we're not going to use the gun. Yeah, Curley said. Was it his gun? Was it Curley's decision to make? Why did he bring the gun? Yeah. Curley said he always has a gun. So the answer to that, then, is he always possesses it. Why does he always have a gun to an intended robbery? Again, if there is. . . Wasn't it for a conversation piece? If. . . I'm arguing based on the facts that are in this record, and what we have Curley's. . . That's all right. And I'm asking a question from the facts in the record. Did he tell them not to bring the gun? They had an agreement where they would not use a gun to commit the robbery and, as I believe the record says. . . But he brought the gun. But he also said, I agree, we're going to beat him up. We're not going to. . . Being a man of his word, Curley then tries to rob him of his gun. Curley certainly is. . . You know, if we had something like that. . . He saw an opportunity. I suppose. . . Holy mackerel. The contention then would be that anyone in commission of a robbery isn't good at their work. The rest of us managed to shoot himself and be charged with possession of a weapon. All right. And if I may move on on this February 21 date, the government argues in the alternative on that. And just to address it quickly, the district court, although the district court did not find it was insufficient, there's certainly enough here that the district court had great doubt because the district court was asked to find, based on the February 21, the district court said, I'm amending and deleting here. And there was, I submit quickly, this was, you can make this. . . It seems a little sharp to charge him as one crime in the indictment and then to separate the crimes for the purpose of sentencing. Yes, yes. To utilize the February 21 crime. Yes. As an enhancement. Yes. And so, and that's another reason, you know, turning quickly then to this contention about the unanimous on the two individual events. I do concede that it is proper for the government to charge the gun crime as a continuing offense under this court's decision in Walter. But that does not change the problem in this case. And that is that, in fact, the factual theory of this case was that he either possessed it on February 21 or February 26 or both. From the government's standpoint, he possessed it on both dates. But at a minimum, he's guilty if he possessed it on one or the other. And in a situation like that, and under this court's decision in Schiff, a special verdict may be required if you have a situation in which there's danger of confusion to the jury. And here there would be danger of confusion because there really would have to be unanimity of the jury as to one date or the other date or both. So that was what the instruction asked. And so what is possible in this verdict is you can have some jurors saying I believe February 21, others saying I believe February 26. You get a unanimous verdict on a general verdict, but what's hidden in there is a non-unanimous verdict. Was it charged as a continuous offense? It was. Or was it charged as to the two particular dates? My recollection, it was charged, but certainly the arguments focused very strongly on the individual dates. So the contention is factual. Okay. Thanks. Thank you. We'll hear from the government. There's a switch. Paul's going to show you to lower it. I should have worn heels. Thank you. That's okay. May it please the court. Your Honor, my name is Amanda Kramer. I represent the United States in this appeal, as I did below. The conviction and sentence should be affirmed. I'd like to start by responding to something counsel just said. This case was charged as one continuing offense, and although there was evidence of events on February 21st and evidence of events on February 26th, there was no doubt that the government charged this as one continuing offense. Indeed, the February 21st shooting, a person looking like Estevez, is seen on video surveillance, running away from the scene with a gun. That is the gun that is used on February 26th. There was no facial shot of that person who was running away. It wasn't. He was not susceptible to any facial recognition. That is correct, Your Honor, although Estevez's cell phone location data indicated that he was near the IHOP at the time, contrary to his argument at trial that he was at home far away. The only DNA found on the firearm was Estevez's, and ballistics showed that it was indeed the same firearm that was used on February 21st and February 26th. So the notion that these are two distinct events that were separated by several days is just not at all supported by the record. This court has held that possession of a firearm by someone previously convicted of a felony is a continuing offense. That's how it was charged, and there's nothing improper about that. Because of that, the judge's general unanimity instruction was absolutely proper. There was no risk of confusion here. In the cases that we found that possession is a continuing offense, has there been an issue as to the jury's obligation to find possession on a particular date? Not that I have found, Your Honor, but in the firearms context in United States v. Johnson in 2016, this court held that no unanimity is required as to which specific gun was possessed, used, or carried. As to which gun? Yes, Your Honor. But when the government is charging a continuing offense, and the indictment, I think, argues that he possessed this gun from honor about the 21st through the 29th, why is it that the government can prove that offense by just having the jury find that he possessed it at one or any given time during that period and not throughout that period? Well, Your Honor, I think this court has so held in other cases where a time frame . . . In what case have we dealt with what the jury must find as to the date on which possession occurred when this is charged as an offense that occurred from honor about such and such a date through another date, a later date? I don't know, Your Honor, but there was overwhelming evidence that he possessed the gun during the entire time period. So, on February 21st, the ballistics demonstrate that the gun that he possessed five days later was used. A person looking like him, it was not . . . On that first part? Yes. Someone was shot on the 21st. The bullet was retrieved, I gather, and the ballistics evidence shows that it was the same gun. Someone was shot at, Your Honor, so Estevez . . . Oh, they found the bullet. Yes, Your Honor. They found bullet fragments and bullet casings in the parking lot, tested them . . . And the ballistics evidence shows that it's the same gun that was involved on the 26th. Yes, Your Honor, and on the 26th, the evidence was overwhelming in several respects. Surveillance video shows Estevez . . . Can I get to that? Certainly. I mean, unrelated to Judge Kearse's question, if the jury found unanimously that he had the gun on the 26th and that was it, is that sufficient to support a conviction on a count that charges possession for five days? Yes, Your Honor. Even though the unanimous verdict is only as to one day? Yes, Your Honor. I don't . . . And the reason for . . . I remember we used to give a charge on the variance in time. I don't know. What's the theory on why one day would be sufficient when the indictment charges five days? Well, Your Honor, the indictment, I think to address Your Honor's . . . It's on or about also. It has two points. It says on or about, and it lays out the dates as a range. I think Your Honor asked earlier whether this was charged as one continuing offense or whether it was charged as separate individual dates where these were distinct events, which potentially could create confusion depending on the circumstances. That was not the case at all here. So for the jury to have a sufficient unanimous verdict, they need to find that at some point during the charge period he possessed the gun. And that's enough to show that he possessed it throughout. At some point between on or about February 21st and February 26th. Yes, Your Honor. Is there a case that says that? That possession on one day is sufficient to cover a count that charges on or about five days? I don't know right now, Your Honor. I apologize. But the . . . But your fallback argument is that the proof showed that he had it for all five days. Yes, Your Honor. There was absolutely no meaningful risk of confusion or prejudice here because of the evidence that he had the gun unequivocally on February 26th. The surveillance video shows his face with the gun in his hand. He is, as Your Honor mentioned, grazed by the bullet. Curley testified that it was Estevez who had the gun, who brought the gun. And Curley identified from the IHOP surveillance Sharkey. So Sharkey was the target of the planned February 26th robbery. Curley testified that he always carried it with him. Curley testified that he always carried a gun. And then the prison calls really resolve any remaining doubt. So . . . In the prison call, he's talking to someone who asks if the police asked him about the IHOP robbery. And he says no. And the friend says good. Doesn't that sound as if the friend might have been the shooter? No, Your Honor. I think that . . . The friend was concerned about what the authorities knew about this IHOP incident. That's true, Your Honor. We have no facial recognition of the person who was running away with the gun. Why isn't it a permissible inference that it was the friend who asked about what the authorities knew and who perhaps was not recognizable? Do we know anything about the person he was talking to on the phone? No, Your Honor. But Curley testified . . . I don't know whether he might have been the same height and weight as Mr. Estevez. I don't know what his makeup was, Your Honor, but Curley testified that Estevez always had his gun. So the notion that he would have given his gun to shoot at someone is, I think, belied by the testimony that Judge McMahon credited. Was Curley at the IHOP? No, Your Honor. In fact, cell site data showed that Curley was elsewhere. He doesn't know that Estevez always has his gun. He only knows that Estevez has his gun when Curley is in his presence. That's true, Your Honor. But the target of the robbery on February 26 was Sharkey. Sharkey was in the group of individuals, and he was identified from the surveillance video by Curley at the IHOP on February 21. So Sharkey got into the car with an individual who appeared to be the target of the shooting. So respectfully, I think it would be a stretch to say that it's an inference that someone else was using Estevez's gun, that just five days later he pulled out of his own pants, and that only, only carried his DNA. I mean, that might be a reasonable inference, but you're saying that on the basis of all the evidence, the gun improved beyond a reasonable doubt that on the 21st it was Estevez in possession of the gun. Yes, Your Honor. And so the four-point enhancement was properly imposed by the district court. And although counsel suggested that the reason that the February 21st incident was discounted by the court was, you know, that the discounting of that, the removal of it from the PSR reflected some doubt, that's not supported by the record. Indeed, the transcript makes very clear that the district court said, I have found this for February 26th, so I need not consider February 21st. But both events would support the four-point enhancement. The jury was properly instructed on unanimity. The guideline sentence the district court imposed was procedurally and substantively reasonable. And we ask that the judgment of conviction be affirmed. Thank you. Thank you. We'll hear the rebuttal. Judge Kiras, I think you hit exactly what the district court thought was the problem with February 21. And that is that this evidence, no facial recognition, grainy video, ballistics, we know ballistics evidence. And here we have counsel saying, well, what was recovered, bullet fragments, and you're supposed to be able to tell from fragments a ballistic test as to whether it's fired from the same gun. We know these types of- There's no testimony to that effect, that the bullet fragment was from the same gun. True. But we combine it then with, here we have the district court. And I submit that if the district court is being asked based on February 21 to rule on February 21 to support the enhancement, and the district court says no and deletes it from the PSR, it's an . . . He didn't need to reach it. Yeah, didn't need to reach, but if it was . . . And so he did not make a decision with respect to the 21st. Did not, but let me . . . I would say it's an indication, at least. It's an indicator of doubt. But what I will also say is what is presently before this court as an appellate court, then. We do not have a district court finding. And so it's, in a sense, a reversal. Here we have the district court who is in the better position to weigh the evidence, to make a determination. The court did not. And here we now, the government is asking this court with respect to February 21 to weigh this evidence. And this court is not in the superior position, actually, with standards of review in this sort of situation. It is the deference to the district court, and we have no district court finding of weighing here. What you're hearing is the government's argument that was not found by . . . So there are affirmative statements going on here saying this happened, this happened, it's the same gun, et cetera. Well, there really had to be a determination by the district court if you're going to rely on that. And if it gets to that, I would submit that either the court would say this is insufficient on this basis, or a remand is necessary for the district court to make that factual finding. But the government puts this court in a difficult spot to be trying to make a weighing of evidence on the record. Thank you. Thank you. We'll reserve decision.